[Cribbs v. The State.]

# Cribbs *v.* The State.

*Indictment for Murder.*

1. *Threats by defendant against deceased.*—Threats made by the defendant against the person slain are admissible as evidence against him, though made several months before the killing, or in some respects conditional, or immediately retracted on being advised or cautioned; these circumstances affecting only their probative force, as determined by the jury.

2. *Malice, as ingredient of murd r.*—Malice, as an ingredient of murder, may be defined to be the killing of a human being without legal justification, excuse, or extenuation; and a charge instructing the jury "that it does not necessarily mean hatred or ill-will, but the intentional doing of an unlawful act," is erroneous.

3. *Self-defense, charge as to.*—A charge invoking the doctrine of self-defense, in a case of homicide, but omitting the duty to retreat as an element of it, is properly refused.

FROM the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

The defendant in this case, Wesley Cribbs, was indicted for the murder of Jack Thomas, "by striking or cutting him with a knife;" was convicted of murder in the second degree, and sentenced to the penitentiary for the term of nineteen years. On the trial, as appears from the bill of exceptions, it was shown that the killing occurred in January, 1888, about sunrise in the morning, on a plantation in the county where the parties were employed and resided, both of them being freedmen; that the deceased was sharpening an axe when the defendant passed through the yard, and spoke to him, saying in substance: "You must stop telling those lies on me, or there will be trouble; and if you acknowledge now that you said I stole Mr. Peck's eggs, I'll whip you, or you will have to whip me;" to which the deceased replied: "If you want to whip me, come on, I'm ready for you now." The defendant then went towards the overseer, who was standing some twenty or thirty yards beyond, and being sent back for something, the altercation between him and deceased was resumed, and ended in the fatal difficulty. As they approached each other, the deceased picked up a brick, while the defendant had a stick in his hand; but he threw down the stick, and drew his knife, and the deceased then picked up the stick, and used it in the fight, striking the defendant

several blows, while the defendant cut him several times with the knife. They fought until separated, and the deceased died about three hours afterwards, from the wounds he had received. The knife "was a spring-back knife, having a blade between two and three inches long." The State offered to prove that, "on the night before the difficulty, the defendant had said, that if the deceased acknowledged he had said that defendant stole Mr. Peck's eggs, there would be trouble between them, and that he would kill the deceased;" but the witness further testified, "that the defendant, before said conversation was ended, on being advised not to have a difficulty, retracted said threats." The defendant thereupon moved to exclude said threats as evidence, and excepted to the overruling of his motion. A witness for the State testified, also, "that several months prior to the difficulty, in speaking to the defendant about a difficulty he (witness) had with the deceased, defendant said, 'that he had better not cross his path, or he would kill him.'" To the admission of this evidence the defendant duly objected and excepted. "The evidence showed, also, that the defendant and the deceased had been thrown together every day for several months, and were friendly, and had never had any previous difficulty."

On this evidence, the court gave the following (with other) charges to the jury, the defendant duly excepting to each: (1.) "Malice, in law, does not necessarily mean hatred or ill-will, but the intentional doing of an unlawful act." (2.) "Before the jury can acquit the defendant, on the ground of self-defense, three essential elements must concur: (1) the defendant must be reasonably without fault in bringing on the difficulty, and must not be disregardful of the consequences in this respect of any wrongful word or act; (2) there must have existed at the time, either really, or so apparently as to lead a reasonable mind to the belief that it actually existed, a present, impending, imperious necessity to strike, in order to save his life, or to save himself from great bodily harm; and (3) there must have been no other reasonable mode of escape by retreat, or by avoiding the combat with safety." (The third charge asserted the doctrine of self-defense in almost the same words, and the fourth and fifth charges defined murder in the first degree.) (6.) "The law has fixed no time, within which the formed design to take life must exist; if the said design was formed but for an instant before the killing, that is sufficient." (7.) "Where a party enters into a contest, dangerously armed

with a knife or pistol, and fights under an undue advantage, though mutual blows pass; if he slays his adversary pursuant to a previously formed design, either special or general, to use a knife or pistol in case of emergency, it is not manslaughter, but it is murder."

The defendant also excepted to the refusal of the following charge, which was asked by him in writing: "If the defendant had reasonable grounds for believing that his life was in danger, or that he was in danger of great bodily harm, not having himself brought on the attack, it is self-defense, and it is the duty of the jury to acquit the defendant."

THOS. H. WATTS, Jr., for appellant.

WM. L. MARTIN, Attorney-General, for the State.

CLOPTON, J.—Threats by the accused against the party slain are not rendered inadmissible, because made a few months before the homicide, nor because they may be in some respect conditional, nor because the defendant, on being advised or cautioned, may immediately retract them. Though they may not be, of themselves, convincing evidence of guilt, they are admissible in evidence when followed by the homicide, as evincing the criminal intent, from which, in connection with other circumstances, guilt may be logically inferred. Their probative force is a question for the jury, dependent on their nature, and the circumstances under which they were made. Such considerations do not affect their admissibility.—*Winslow v. State*, 76 Ala. 42; *Ford v. State*, 71 Ala. 385; *Ex parte King*, p. 620.

At the request of the prosecution, the court instructed the jury, "malice, in law, does not necessarily mean hatred, or ill-will, but the intentional doing of an unlawful act." The accuracy of the definition must be determined in view of the character of the crime, with which the defendant is charged. Legal malice, sufficient to maintain a civil action for malicious prosecution, or a resort to legal process, may exist whenever a wrong and unlawful act is willfully and purposely done. As usually defined, malice, in its legal sense, does not necessarily denote malevolence, or enmity towards a particular individual, but also signifies an intent or mental state, evinced by the commission of an unlawful and injurious act, without justifying or excusatory cause. This definition, however, is not sufficiently accurate and comprehensive, when

applied to malice as an essential ingredient of murder. In *Hadley v. State*, 58 Ala. 31, it is thus defined: "Malice, as an ingredient of murder, is but a formed design, by a sane mind, to take life unlawfully, without such impending danger to be averted thereby as will render it excusable, and without such provocation as will repel the imputation of formed design." Manslaughter in the first degree, which is the voluntary depriving a human being of life, is unlawful. The characteristic which distinguishes it from murder, is the absence of malice. Though the taking of life under provocation is neither justifiable nor excusable—is intentional and unlawful; yet, the provocation may be so great, and calculated to exasperate, as to deprive the homicide of its malicious character. The definition of malice, as given in the charge, would constitute every intentional and unlawful homicide malicious, though committed in heat of passion, excited by sufficient provocation. Malice, as an ingredient of murder, may be defined, in legal phrase, as the killing of a human being, without legal justification, excuse, or extenuation. *Nye v. People*, 35 Mich. 16.

The instructions of the court, relating to the plea of self-defense, are in accord with our uniform rulings. The charge requested by defendant, ignores essential elements of the doctrine.—*Carter v. State*, 82 Ala. 13; *Brown v. State*, 83 Ala. 13. The other charges may be obnoxious to criticism; one as singling out and giving undue prominence to the threats; and the other, as assuming that there is evidence tending to show that defendant entered into the combat dangerously armed with a knife or pistol. The evidence discloses that the accused only had a pocket-knife, which he did not attempt to draw until after the struggle had commenced. Such charges should be avoided as far as practicable, being calculated to unduly impress the minds of the jury, and prejudice the defendant. When given, however, they will not work a reversal of the judgment, unless it appears that injury resulted.

Reversed and remanded.