# Smith v. The State.

## *Murder.*

Decided May 8, 1913. Rehearing denied June 19, 1913.
62 South. 864.)

1. *Appeal and Error; Harmless Error; Evidence.*—Where there was ample other proof that deceased knew that defendant had the gun, it was not error to reversal to exclude the evidence of a witness, present at the time, who had testified that he saw a gun on defendant's person, as to whether deceased could have seen the gun.

2. *Same.*—Where evidence is afterwards excluded with instructions to the jury to disregard such evidence, the error in admitting it is cured.

3. *Same.*—The practice of excluding evidence generally, as by a ruling "excluding everything except what defendant said" with reference to a certain matter is not to be commended.

4. *Same; Review; Presentation Below.*—Where the only objection to evidence was by a motion to exclude such evidence after it had gone to the jury, the objection was too late to authorize this court to review the court's action thereon.

5. *Same; Right to Allege.*—Where a defendant took the initiative in eliciting part of the details of a difficulty between defendant and another which resulted in the arrest of defendant by deceased shortly before the homicide, the defendant could not object to the admissions of such details in evidence, although they were not admissible for the state.

6. *Same; Presentation Below.*—Error in admitting evidence cannot be reviewed where the action of the court in admitting it was not excepted to.

7. *Same; Harmless Error; Evidence.*—Evidence that defendant was connected with the running of a blind tiger was immaterial and its admission cannot be said to be harmless to the defendant.

8. *Same.*—Where a statement by a deceased immediately after he was shot did not identify the assailant or the circumstances of the assault, its admission cannot be said to be harmful.

9. *Homicide; Evidence.*—Evidence as to the caliber of the revolver by which deceased was shot was not relevant or material on the question whether defendant or deceased fired the first shot.

10. *Same.*—The evidence examined and it is held to be a question for the jury whether deceased saw defendant's gun when they went out together.

11. *Same; Threats.*—As threats may be made by words which are meaningless unless explained, and the fact that a threat is coupled with a condition, merely affects its weight as evidence, and not its

[Smith v. The State.]

admissibility, the rule that the circumstances connected with threats made previous to the killing are not admissible, is subject to exceptions; hence, the state may show the meaning of a condition attached to a threat where its meaning does not appear on the face of the threat.

12. *Same; Dying Declarations.*—The exclamation by deceased "boys, he has killed me!" made while he was lying on the floor after being helped into the room immediately after he was shot, where he died within a few minutes, was admissible as the wound was mortal, and the circumstances showed that deceased realized his impending dissolution when he made the exclamation.

13. *Same; Res Gestae.*—Where a son of deceased came into the room where the body of deceased lay, about ten minutes after deceased had died, and asked, while crying, "is my papa dead?" the reply of defendant, "Yes, old Pat is dead, Son," was not admissible as a part of the res gestæ.

14. *Same; Hostility.*—The evidence as stated above became admissible as tending to show hostility at the time of the statement, and hence, to authorize an inference of hostility at the time of the killing where it further appeared that defendant repeated the statement three times, each time raising his voice as he did so.

15. *Same.*—Evidence of subsequent hostility by defendant is admissible provided the time between its expression and the time of the killing is not too distant; it being for the trial judge to determine whether the intervening time is too long to permit an inference of hostility at the time of the killing.

16. *Same; Clothing.*—The clothing worn by deceased showing the location of the wound is admissible in evidence.

17. *Same.*—Where defendant appeared at the trial with one leg gone, having lost it previous to the homicide, it was competent to show that at the time of the homicide he was going about on two legs, one of which was wooden; it being for defendant to explain the circumstances if he thought the evidence admitted prejudicial to him.

18. *Evidence; Purpose.*—Where evidence is admissible for a proper purpose, it cannot be excluded on the ground that it was susceptible of being used to the prejudice of defendant; his remedy being to instruct the jury as to its legitimate purpose.

19. *Witnesses; Impeachment; Evidence Wrongfully Obtained.*—After the indictment was returned and the witnesses summoned for the trial, certain witnesses were summoned before the grand jury and examined, and at the trial, these witnesses appeared for the defendant, and their statements before the grand jury were shown for the purpose of impeaching their testimony as witnesses for defendant. Held, if the purpose of such procedure was to procure an examination by the grand jury of defendant's witnesses before his trial, it was an abuse of power of the grand jury, but such fact would not preclude the state from utilizing evidence thus procured, for impeaching purposes.

20. *Same; Credibility; Intoxication.*—The evidence of a witness cannot, as a matter of law, be disregarded because the witness was somewhat intoxicated at the time of the occurrences testified to by him, although that fact may be shown and considered by the jury in determining the credibility to be given to such testimony.

21. *Evidence; Attempt to Suppress Truth.*—Evidence that a defendant requested a witness "not to tell anything, and that he could have what he wanted," was admissible as tending to show an effort to suppress the truth; the defendant having a right to give the statement an innocent meaning if he could do so.

22. *Charge of Court; Reasonable Doubt.*—A charge asserting that if the evidence for the state consists of the statements of witnesses of the truth of which the jury have a reasonable doubt, they cannot convict defendant is properly refused as a misleading statement of the doctrine of reasonable doubt; the jury being authorized to convict although it may not believe everything testified to by witnesses for the state.

23. *Same; Abstract Instructions.*—There is no error in refusing abstract instructions.

24. *Homicide; Instructions; Degree.*—A charge asserting that if the jury was reasonably doubtful as to the proof of any material allegation of the indictment, they must acquit, was misleading in a homicide case, as the offense charged included every minor offense of which defendant might be convicted.

25. *Same; Self-Defense.*—If defendant brought on the difficulty, the manner of his invitation to deceased to come around the corner, etc., would not excuse him from bringing it on; hence, a charge predicating the right of self-defense on the peaceable manner in which defendant asked deceased to come around the corner, was properly refused.

26. *Same.*—A charge of self-defense which is defective because pretermitting defendant's belief that he was in peril at the time of the killing, was properly refused.

27. *Same; Duty to Retreat.*—Where a defendant is free from fault in bringing on a difficulty he is under no duty to retreat unless he can do so with reasonable safety and without increasing his danger.

28. *Same.*—Charge 10 examined and it is held that while the latter part of the charge was defective for not clearly stating the necessity of defendant's freedom from fault as a condition to his right not to retreat, yet when construed with the first part of the charge, this deficiency is supplied, and that the instruction as a whole was correct, and should have been given, under the evidence in this case.

29. *Criminal Law; Showing Error; Burden of Proof.*—The burden of showing error is upon an appellant, but where error is shown in a criminal case, the burden of showing that it did not injure defendant is upon the state.

(McClellan and Somerville, JJ., dissent in part.)

APPEAL from Gadsden City Court.

Heard before Hon. JAMES A. BILBRO.

Jay Smith was convicted of first degree murder, and appeals. Reversed and remanded.

The defendant was indicted and tried for killing one Will A. Patterson with a pistol. The witness Cox tes-

tified that there had been trouble between deceased and defendant, and that he had been with defendant for about 30 minutes before the shooting took place, but that just before the shooting took place he had gone into the drug store, but that he heard the defendant in a seemingly friendly manner ask deceased to come around behind the store, that he wanted to see him a minute, and heard deceased decline to go with him into the dark, but told him that if he wanted to see him to come into the light in the drug store; that Mr. Felix Walker then said to the deceased, "Come on, Patterson, and I will go with you," Walker being with Smith at the time, and a few minutes afterwards the pistol fired several times, and witness saw Patterson reel and fall on the sidewalk; that Walker was standing between the two, with his right side to Patterson and his left side to Smith; and that Walker was shot in the melee.

Testifying for the state, Felix Walker said: "I was with Smith at the time Patterson was killed at night, at or about the corner of Martin's drug store in Alabama City. About the time I got to the corner Smith came up, but I did not see Patterson. A little later I saw Patterson come out of the barber shop, and come across and start into Martin's drug store, and Smith said to him, 'Pat, I want to see you a minute; come out in the street.' Patterson replied, 'Come on in the light,' and Smith told him to come on down the street, but Patterson turned and walked back to the door, and I said, 'Yes,' or "I will go with you,' I don't remember which, and we stepped out on the sidewalk, and Mr. Smith pulled up his coat and turned round and said, 'You see I ain't got any gun,' and Patterson says, 'Yes, Jay, you have got a gun.' Witness saw the gun as Smith turned around, and walked over to Smith to get him to go off. I told him to come and let's go off. Patterson said noth-

ing, and I don't think Smith said anything. Smith then threw his hand on his gun, and I threw my hand to his gun, and said to him, 'Don't take your gun out.' He jerked twice, and the gun fired and struck me in the leg, and I pitched out in the street, and Smith got his gun out of his pocket, but Patterson drew no gun. After I was shot I was unconscious, and when I came to myself I was lying with my head in Smith's lap."

The witness was asked on cross-examination: "You saw the pistol when Smith turned around?" and replied in the affirmative. The defendant then asked, "Patterson could have seen it?" The state objected to the question, and the objection was sustained, and defendant excepted.

The following charges were refused to defendant:

(1) "If the evidence of the state consists of the statement of witnesses of the truth of which the jury have a reasonable doubt, you cannot convict the defendant."

(2) "The court charges you that, if you are reasonably doubtful as to the proof in this case of any material allegation of the indictment, you must acquit the defendant."

(6) "If the jury believe from the evidence that the state's witness Walker was drunk or under the influence of liquor at the time of the shooting of Patterson, then the jury may disregard the testimony of said Walker entirely."

(7) "The court charges the jury that if you believe from all the evidence in this case that it was communicated to the defendant prior to the difficulty that deceased wanted to see him at or near the place where he was killed, and defendant went to said place under the belief that deceased was desirous of seeing him there, and for no hostile or other improper purpose, and did approach the deceased in a peaceable and orderly man-

ner, and was without fault in bringing on the difficulty
with the deceased, and the deceased stated to the de-
fendant in substance that he did not want to talk to
him, that defendant had a pistol, and defendant stated
to the deceased that he did not have a pistol, and de-
ceased immediately started to draw and did draw a pis-
tol from his person and fired upon or in the direction
of defendant, and it reasonably appeared to defendant
at the time he could not retreat with reasonable safety
to himself, and it further reasonably appeared that he
was in imminent danger of life or limb at the hands of
deceased, and under such circumstances the defendant
fired upon and killed the deceased, then I charge you
the defendant had violated no law, and it will be your
duty to return the following verdict: "We, the jury,
find the defendant not guilty."

(8) "If you believe from the evidence that defendant,
in a peaceable manner, asked deceased to come around
the corner, that he wanted to see him, and deceased, on
going around the corner, stated to defendant that he
had a gun on him, and that defendant pulled up his
coat and stated to deceased that he did not have a pistol,
and deceased then started to draw his weapon, and it
reasonably appeared to the defendant that he was in
serious danger to life or limb, and that he could not
retreat with reasonable safety, the jury should acquit
the defendant."

(9) "If you find after a consideration of all the evi-
dence that deceased was a man of violent, dan-
gerous, or bloodthirsty general character, and had made
threats to take the life of defendant before the moon
went down that night, and these threats were commu-
nicated to defendant before the shooting, and defend-
ant was free from fault in bringing on the difficulty,
and that at the time he fired the fatal shot it reasonably

appeared to him that he was in imminent peril of life or limb at the hands of deceased, and there appeared no reasonable mode of escape from such impending peril, then I charge you the defendant had the right to shoot to kill, and, further, to act more readily upon appearances than if deceased had been a man of peace and quiet in the community in which he lived."

(10) "If defendant was free from fault in bringing on the difficulty, he was under no duty to retreat, unless you believe that he could have retreated without increasing his danger or with reasonable safety. It is not necessary, under the evidence in this case, that defendant should have been actually in danger of death or great bodily harm at the time he killed the deceased, or that retreat would have really increased his peril in order for him to have been justified in shooting the deceased. He had the right to act on the appearances of things at the time, taken in the light of all the evidence, and he had the right to interpret the conduct of deceased in the light of any threats that the evidence proves deceased to have made against the defendant. If the circumstances attending the killing are such as to justify a reasonable man in the belief that he was in danger of great bodily harm or death, and that he could not have retreated without adding to his peril, and he honestly believes such to be the case, then he had a right to shoot the deceased in his own defense, although, as a matter of fact, he may have been in no actual danger, and retreat would not have endangered his personal safety; and if the jury believe that defendant acted under such conditions and circumstances as above set out, the burden of showing that he was not free from fault in bringing on the difficulty was on the state, and if not shown the jury must acquit."

W. J. Boykin, and W. J. Martin, for appellant. The court erred in admitting evidence as to the size of the caliber of the pistol with which the killing was done.— Wigmore on Evid. sec. 555; 26 N. W. 291; 97 N. Y. 507; *B. E. Co. v. Ellard*, 135 Ala. 433; *Price v. State*, 100 Ala. 144; *Torrey v. State*, 113 Ala. 496; *A. G. S. v. Burgess*, 119 Ala. 555; *Sanders v. State*, 2 Ala. App. 23. The court erred in refusing to permit plaintiff to show on the cross of the witness Walker that deceased could have seen defendant's pistol.—*Gordon v. State*, 140 Ala. 32. The court erred in permitting threats of defendant towards deceased to be shown, and also erred in permitting it to be shown that defendant was connected with running a blind tiger, as all of such matters has reference to details of a previous difficulty between defendant and another person.—*Gordon v. State, supra; Harkness v. State*, 129 Ala. 71; *Rutledge v. State*, 88 Ala. 85; *Stanfield v. State*, 3 Ala. App. 59. The court erred in admitting the declarations of deceased.—*Kirby v. State*, 89 Ala. 63; *Moses v. State*, 88 Ala. 78; *Long v. State*, 2 Ala. App. 97; *Green v. State*, 96 Ala. 32; *Rollins v. State*, 160 Ala. 87. The clothing were inadmissible.—*Rollins v. State, supra; Robinson v. State*, 108 Ala. 14; *Pearson v. State*, 97 Ala. 219. The statements were inadmissible because not a part of the res gestæ.— *Simmons v. State*, 129 Ala. 41; *Harkness v. State*, 129 Ala. 71; *Williams v. State*, 130 Ala. 107; *Stallings v. State*, 142 Ala. 112; *Reeves v. State*, 158 Ala. 5. The court erred in its action in permitting witnesses for defendant to be impeached by statements alleged to have been made by them when called before the grand jury after the indictment had been found.—*State v. Blocker*, 14 Ala. 453; *Banks v. State*, 78 Ala.; *Thompson v. State*, 99 Ala. 173; *Fields v. State*, 121 Ala. 16. Charge 1 should have been given.—*Mills' Case*, 55

South. 332. Charge 8 should have been given.—*DeArman's Case,* 71 Ala. 351. Charge 10 was improperly refused.—*Blewett's Case,* 161 Ala. 16; *Snyder's Case,* 145 Ala. 33; *Green's Case,* 156 Ala. 29; *Davidson's Case,* 167 Ala. 68; *Anderson's Case,* 159 Ala. 14. Charge 11 should have been given on these authorities.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

SAYRE, J.—Defendant was convicted of the murder of one Patterson, and sentenced to suffer death. At his trial defendant reserved a great number of exceptions to adverse rulings on questions of evidence. They have been duly considered, but it has been found unprofitable to state them severally, and impossible to do so within reasonable limits. We have, however, stated such of them as seem to involve questions of merit, and perhaps some besides.

Dr. Burns, a witness for the state, was permitted to give his opinion as to the caliber of the pistol ball which caused the death of deceased. This he appears to have done from an inspection of the fatal wound. He was a medical man of ample general experience, but his observation of things in more immediate point had been meager, and possibly his opinion in that particular was not of much moment; but if it be conceded that his qualification as an expert in the matter of calibers was unsatisfactory, still, considering that defendant did not deny that he had caused the death of deceased by shooting him with a pistol, it is not perceived how the doctor's more intimate knowledge and better grounded judgment in the matter of wounds as demonstrating the caliber of the weapons by which they are inflicted could have been of any benefit to the defendant. In fact, the

progress of the case developed no real reason for the
question about the size of the bullet. True, as suggest-
ed, a third person also received an unintentional wound,
and, under the circumstances, the question whether his
wound came from the weapon in the hand of defendant
or that in the hand of deceased would have been of sig-
nificance as tending to show that deceased fired a shot,
which some of the testimony seemed to deny, and pos-
sibly, also, in one event as tending to show who fired the
first shot; but on that inquiry the mere caliber of the
weapon inflicting the wound upon deceased shed no
light, nor, in view of the admitted facts, did it serve
any other indispensable purpose of the defendant.

On consideration of the conditions shown to have ex-
isted at the time, a statement of which in full detail we
will leave to the reporter, we are not willing to affirm
reversible error of the trial court's rulings in refusing
to allow the witness Felix Walker to answer defend-
ant's question whether deceased could have seen de-
fendant's pistol. It appeared throughout the case that
defendant and deceased had each made threats against
the life of the other. Both were armed in anticipation
of a meeting. Late in the afternoon before the killing,
deceased, who was a police officer, had arrested defend-
ant, and upon that occasion defendant had threatened
the life of deceased. The testimony of this witness went
to show that when the parties met some hours after-
ward, deceased, after demurring, had, on defendant's in-
vitation—made, it seems, in a friendly manner—gone
around the corner into a place not so well lighted as the
street from which they went, where defendant pulled up
his coat, and, turning around, said to deceased, "You
see I ain't got any gun." Defendant contends that his
question, which followed should have had an answer
because, if in the affirmative, it would have supported

his insistence that as soon as deceased discovered that
defendant was armed the former determined and at-
tempted to kill, before the latter could get his pistol
into action. There are cases which seem in principle to
uphold the defendant so far as concerns the competen-
cy of the answer.—*Cox v. State,* 78 Ala. 66; *E. T. V. &
G. R. R. v. Watson,* 90 Ala. 41, 7 South. 813; *McVay v.
State,* 100 Ala. 110, 14 South. 862; *A. G. S. R. R. v.
Linn,* 103 Ala. 134, 15 South. 508; *Rollings v. State,* 136
Ala. 126, 34 South. 349; *Adler v. Pruitt,* 169 Ala. 213,
53 South. 315, 32 L. R. A. (N. S.) 889. But in the
present case it is certain that defendant had his weapon
then on his person, though not in the hip pocket exhibit-
ed to deceased. The witness saw it, and the deceased
no doubt saw it, for he said, "Yes, Jay, you have got a
gun." The evidence of this statement by the deceased
was corroborated by the defendant. While it was a
question for the jury whether deceased saw defendant's
weapon, and acted upon the idea suggested in argument,
it is not perceived how proof of defendant's failure to de-
ceive deceased in respect to his possession of a weapon
could have materially advanced the cause of the defense,
or how the witness' statement of his opinion, or short-
hand rendering of the facts as it may be called, which,
under the circumstances, was weak and inconclusive at
best, could have materially affected the jury's finding
in the presence of abundant proof otherwise that de-
ceased was aware of the fact that defendant was armed.
We feel justified, therefore, in saying that this ruling
was not error for which a reversal should be ordered.

The witness Kane was brought forward to prove
threats made by defendant at the time of his arrest by
deceased in the afternoon. This witness also testified
to what deceased said to defendant at the same time.
Later on, however, the court, responding to defendant's

motion, ruled: "I exclude everything except what the defendant said." Defendant complains in his brief that at several points the trial court adopted this method of curing errors. The practice has been regarded by this court as not to be commended, but the ruling in similar cases has been that an objection to testimony, erroneously admitted in the first instance, is not available on appeal, where the testimony is afterwards excluded with instructions to the jury not to regard it.—*Jackson v. State,* 94 Ala. 85, 10 South. 509; *Green v. State,* 96 Ala. 32, 11 South. 478. Here no such instruction was given. We feel constrained, however, to say that at this particular point no error is shown by the bill of exceptions. This court has heretofore adhered to a strict rule of exclusion in respect to the attendant circumstances of threats made previous to the occasion of the act charged.—*Harkness v. State,* 129 Ala. 71, 30 South. 73; *Willingham v. State,* 130 Ala. 35, 30 South. 429; *May v. State,* 167 Ala. 36, 52 South. 602. But it is evident that the strictness of the rule must of necessity be relaxed in some cases.—*Linehan v. State,* 113 Ala. 70, 21 South. 497; *Gunter v. State,* 111 Ala. 23, 20 South. 632, 56 Am. St. Rep. 17. It may happen that a threat will be conveyed by words which mean nothing without the surroundings. That a threat is coupled with a condition affects its weight, but not its admissibility (*Cribbs v. State,* 86 Ala. 613, 6 South. 109); and, we take it, the state may be allowed, without invading the rights of defendant, to show the meaning of the condition, where that does not appear on the face of the threat. To illustrate: Defendant, according to one witness, had said to deceased: "If you get in here, I will kill you." It does not seem improper, certainly it contributes to an understanding of the true meaning of such an occasion, to show that deceased was trying to arrest defendant,

who was at the time in a buggy and starting to drive away. In this case, for anything appearing in the record, those details to which defendant objected, insignificant in themselves, were brought out by questions which should have put him on guard and should have evoked his objection; but objection was made only by motion to exclude after the matter had reached the jury. The charge of error cannot be sustained under these circumstances.

As for the details of the difficulty between defendant and the witness Kane, which gave occasion for the defendant's arrest by deceased, they were not admissible over the defendant's objection. But if defendant, conceiving that he might thereby get some credit with the jury, took the initiative in eliciting some part of them, he opened the door for the entire res gestæ, lest the jury be misled by an incomplete or garbled version. The bill of exceptions states that the particulars to which defendant objected were admitted for the reason that defendant had drawn out other particulars. The bill is of difficult comprehension, but as well as we can understand it the court's assigned reason was justified by the fact. In fact, as we read the transcript, defendant's breach into the field of particulars was as wide as a church door, and the state had the right to go in through it. And as to much of it, particularly that part of it which defendant complains was most prejudicial to him as tending to create the impression that he had been concerned in "running a blind tiger," at one point the defendant again waived objections by waiting to interpose them until the question had been answered. The question was general; but the answer was not irresponsive. This matter was calculated to prejudice the defendant, and the court might well have excluded it, but in the shape the matter took defendant waived his right

to have it excluded.—*Liner v. State*, 124 Ala. 1, 27
South. 438; *Jarvis v. State*, 138 Ala. 17, 34 South. 1025.
At another point there was timely objection to the question, but no exception to the court's ruling. For these reasons we are unable to hold consonantly with the rule heretofore followed in this court that reversible error intervened at this point.

After deceased had been shot he staggered and was helped into the drug store immediately at hand, where he died within a few minutes. As he lay upon the floor he said, "Boys, he has killed me." Defendant excepted to the reproduction of this statement. The nature of his wound the form of his statement, and the absence of any expression of hope were sufficient to warrant an inference that deceased realized his condition and spoke under a sense of impending dissolution. In truth, the statement was nothing more than an expression of his appreciation of the fact that he was wounded to death. It gave no information as to the identity of his assailant, nor as to the circumstances of the assault. Properly weighed, it was of no value to the state, nor harmful to the defendant. If, however, it be considered to have shed light upon the case, it was properly admitted as a dying declaration.—*Gerald v. State*, 128 Ala. 6, 29 South. 614.

The prosecution was permitted to show that about 10 minutes after the death of deceased, and while his body still lay upon the floor of the drug store, his little boy, who had come to the scene, was crying and asked of no person in particular, it seems, "Is my papa dead?" and that defendant said, "Yes, old Pat's dead, son." The defendant excepted. At another place in the transcript a similar exception is shown to have been reserved on the examination of a different witness as follows: "Here the solicitor asked the witness the following ques-

tion, viz. 'I will ask you if Jay Smith, in reply to Mr. Patterson's little boy over the dead body of that man, he says in this way, says, "Yes, son, old Pat's dead; old Pat's dead ' (solicitor raising his voice as he repeated the word). To this question the defendant objected because illegal, irrelevant, incompetent, immaterial, and inadmissible. The court overruled the objection, and the defendant excepted. The witness answered, 'Yes, sir.' The defendant moved the court to exclude the answer of the witness upon the same grounds interposed to the question; but the court overruled the motion, and the defendant excepted. Witness further stated that was the tone of voice the defendant used. The solicitor continued, 'I will ask you how Smith said it?' The defendant objected to the question, and the court overruled the objection, and the defendant excepted. The solicitor asked the witness, "What did Smith say?' and the defendant objected to what Smith said; but the court overruled the objection, and the defendant excepted. The witness then, in answer to the question objected to by the defendant, said: 'He said: "Old Pat's dead; old Pat's dead; old Pat's dead," '—three times. Here the defendant moved the court to exclude the answer of the witness because illegal, immaterial, incompetent, and inadmissible, and because no sufficient predicate had been laid, and because not shown to be a part of the res gestæ; but the court overruled the motion, and the defendant excepted." The statement attributed by the testimony to defendant was no part of the homicidal act nor of the circumstances so immediately attending the act as to constitute it a part of the res gestæ. Most likely, if defendant at the time had made some exculpatory declaration, it would have been excluded because self-serving.—*Kennedy v. State*, 85 Ala. 326, 5 South. 300. But evidence may be capable of different construc-

tions, and we cannot say that this had no tendency to show defendant's hostility at the time of the declaration, and from that the jury may have inferred hostility at the time of the killing. "Where an emotion of hostility at a specific time is to be shown, the existence in the same person of the same emotion at another time is, in general, plainly admissible. * * * Subsequent hostility is equally receivable."—1 Wigm. on Ev. § 396. Our cases sustain this proposition.—*McManus v. State*, 36 Ala. 285; *Henderson v. State*, 70 Ala. 29; *Walker v. State*, 85 Ala. 7, 4 South. 686, 7 Am. St. Rep. 17. There must be a limit of the time intervening between the time of the hostile expression and that of the act sub judice, beyond which proof of this character ought not to be received; but that must be trusted in some degree to the discretion of the trial court. We have stated our opinion that the expression shown in this case may have been construed by the jury as indicating hostility to the deceased, and, this being so, it followed so closely upon the homicidal act that no objection could be sustained to it for remoteness in point of time. Though probably its legitimate effect as evidence of malice was small, its just interpretation and the weight to be assigned to it were matters for the jury.

Defendant's statement to or request of the witness Walker to the effect that he was "not to tell anything, that he could have what he wanted," and the several slightly variant versions of it were properly admitted. They bore the aspect of an effort to suppress the truth, or pervert the course of justice. If these expressions were capable of an innocent meaning, and in fact defendant meant no harm, that was a question for the jury.

The clothing worn by deceased showed the location of the wound upon his person and, clearly, was admissible in evidence.—*Rollings v. State,* 160 Ala. 82, 49 South. 329.

Defendant appeared at the trial with one leg—he had lost the other prior to the killing. There was no error in allowing the state to show that when he killed deceased he was moving about on two legs—one a wooden leg. There is no room for question about that. But defendant claims the proof was intended and calculated to operate unfairly for him as amounting to an assertion that he was attempting to play upon the sympathies of the jury. Defendant was allowed to offer his explanation. And of this, as of other parts of the evidence of which defendant makes complaint as tending to arouse prejudice against him, it must be said that, being admissible for a lawful purpose, it could not be excluded because capable of being distorted to unfair and prejudicial uses. Defendant's remedy against perversion was, with the aid of the court, to direct the jury's attention to the legitimate purposes and legal effect of the testimony.

Defendant devotes some part of his argument to the fact, which appeared in evidence, that after the indictment against him had been returned into court, and witnesses summoned for the trial, his witnesses were brought before the grand jury and examined touching their knowledge of the case. At the trial statements made under these circumstances were shown for the purpose of impeaching the testimony of defendant's witnesses. It does not occur to us that the course here indicated could have been taken with any proper and lawful purpose. None appears in the bill of exceptions. At least we will say that if the purpose was in this, as the only possible way having an appearance of legit-

imacy, to procure an examination of defendant's witnesses in advance of the trial, the practice indicated a misconception of official duty and an abuse of the powers of the grand jury. But this cannot excuse the witnesses, nor preclude the state.

Charge numbered 1, and refused to defendant, was a misleading statement of the doctrine of reasonable doubt, and there was no error in its refusal. The jury might well have convicted defendant, although they may not have believed everything testified to by the witnesses for the State.

So, also, of charge 2. We have a long line of decisions condemning the charge as misleading in homicide. and other cases in which the offense charged includes other offenses of minor grade of which the defendant may be convicted.—*Stoball v. State,* 116 Ala. 454, 23 South. 162; *Burkett v. State,* 154 Ala. 19, 45 South. 682; *Parham v. State,* 147 Ala. 57, 42 South. 1.

Of course it will not do to say that the jury may discard the evidence of a witness who is shown to have been under the influence of liquor, it may be to a slight degree, at the time of the occurrences to which he undertakes to testify; though that circumstance may weigh against his credibility. No error as to charge 6.

Charge 7 was abstract in several particulars.

Defendant's mere manner in inviting deceased around the corner will not suffice to relieve him of fault in bringing on the difficulty, if in fact his purpose was there more safely to kill him, as the jury may have inferred. No error as to charge 8.

Charge 9 was bad. It was abstract in part, and in part defective for pretermitting defendant's belief that he was in peril.

Our first opinion was that charge 10, refused to the defendant, was involved and confusing. Upon recon-

sideration we have reached the conclusion that the charge correctly and with reasonable clearness ·stated principles of law applicable to the tendencies of the evidence for the prisoner, that its refusal was error the injury of which is not refuted by the record, and that in consequence the judgment of conviction must be reversed. Defendant framed this charge by conjoining two charges which had the approval of this court in *Bluett v. State,* 151 Ala. 41, 44 South. 84. So much of it as instructed the jury that 'if the defendant was free from fault in bringing on the difficulty, he was under no duty to retreat, unless you believe he could have retreated without increasing his danger or with reasonable safety" (charge 8 in the *Bluett Case, supra*) unquestionably contained a correct statement of the law. To this defendant added, so as to make one connected instruction, a copy, mutatis mutandis, of a charge for the refusal of which Bluett twice secured reversals in this court.—151 Ala. 41, 44 South. 84; 161 Ala. 14, 49 South. 854. Notwithstanding the second member of the charge refused to the defendant in the case under consideration —charge 26 in the record shown in 151 Ala..; charge 13 in the record shown in 161 Ala.—has been twice approved, we are inclined to think it is defective because, pretermitting any clear statement of the necessary hypothesis of defendant's freedom from fault as a condition precedent to his right to stand his ground, this part of the charge, to state its substance in a few words, predicated defendant's right to shoot and to a verdict of acquittal upon his reasonable and honest belief that he was in danger of life or limb, and that he could not retreat without adding to his peril. It does properly state the burden of proof in respect to defendant's freedom from fault; but it fails to make any clear affirmation of the fact that defendant's right to stand his

ground depended upon his freedom from fault in bringing on the difficulty. That is left to inference. But this deficiency in the charge was in this case supplied by the addition of the first member which, as we have said, correctly stated the doctrine of retreat as affected by freedom from fault; the two together constituting a correct statement of the law of self-defense. Under the tendencies of defendant's evidence he was entitled to have that law stated to the jury in a special charge. The bill of exceptions informs us that the court on defendant's request gave numerous special charges, and it may be that defendant thereby had the benefit of every principle involved in the charge in question. But those charges have not been certified to this court, as they might have been, and we cannot know that any of them covered this charge. The burden of proving error rests upon the appellant. Error shown, the burden of proving that it did no injury to appellant rests upon the state. For the error in refusing this charge, the judgment of conviction will be reversed.

We find no other reversible error.

Reversed and remanded.

ANDERSON, MAYFIELD, and DE GRAFFENRIED, JJ., concur. McCLELLAN and SOMERVILLE, JJ., dissent as to the finding of error in the refusal of charge 10. DOWDELL, C. J., not sitting.