BROWN v. STATE.

Opinion delivered September 26, 1921.

1.  HOMICIDE—DEFENSE OF PROPERTY.—Under Crawford & Moses' Dig., § 2369, defining justifiable homicide to be the killing of a human being in necessary self defense, or in defense of habitation, person or property against one who manifestly intends or endeavors by violence or surprise to commit a known felony, a person has no right to slay another merely to protect his property unless he is in possession, and the killing is necessary in order to prevent the commission of a felony; the mere fact that property is being wrongfully taken or detained not being a justification of a homicide.

2.    HOMICIDE—DEFENSE·OF PROPERTY—INSTRUCTION.—Where the un-
      disputed fact was that the hogs in controversy between the ac-
      cused and the deceased were in the deceased's possession, and
      that they were not taken by violence or surprise, but under a
      claim of right, it was not error to refuse an instruction on
      the subject of the right to kill in order to protect one's property.

3.    HOMICIDE—MANSLAUGHTER—SUDDEN HEAT OF PASSION.— An in-
      struction that if "defendant shot and killed the deceased while
      they were engaged in an altercation over the ownership of the
      hogs, and while the defendant was excited by the trespass on
      his property and in the heat of passion caused by the attempt
      of the deceased and his confederates to carry off the hogs which
      the defendant believed to belong to him, then the defendant
      "could not be guilty of a higher grade of offense than man-
      slaughter," was property modified in effect so as to state that
      to reduce the crime to voluntary manslaughter the killing must
      "be upon a sudden heat of passion caused by a provocation ap-
      parently sufficient to make this passion irresistible" (Craw-
      ford & Moses' Dig., § 2355).

4.    CRIMINAL LAW—EVIDENCE OF OTHER CRIMES.—Where the de-
      fense sought to be established in a murder case was that the kill-
      ing was done in defense of defendant's hogs running at large in
      the woods, it was not error to refuse to permit defendant to
      show that deceased and his brother had made efforts to take
      up hogs found running in the woods that belonged to other
      persons, except for the purpose of impeaching deceased's brother
      as a witness.

5.    CRIMINAL LAW—REPUTATION OF DECEASED.—It was not error
      to refuse to permit defendant, in a murder case, to prove the
      general reputation of deceased and his brother, where the tes-
      timony was remote in time and place.

6.    WITNESS—LIMITS OF CROSS-EXAMINATION.—Where the court per-
      mitted defendant to cross-examine deceased's brother concern-
      ing his efforts in connection with deceased to take up hogs be-
      longing to other persons, and witness denied any such activity,
      it was not an abuse of discretion to limit the further cross-
      examination of the witness on that subject.

7.    CRIMINAL LAW—RES GESTAE.—It was not error to permit a
      witness in a prosecution for murder growing out of a contro-
      versy over some hogs to testify that, just before the shooting
      occurred, defendant's brother in defendant's presence walked
      up to deceased, and patted him on the shoulder, and shoved him,
      saying: "You are going to turn the hogs out."

8.    HOMICIDE—DEFENDANT'S MENTAL ATTITUDE.— In a prosecution
      for murder, it was competent to prove that after deceased
      was found fatally wounded his brother asked defendant's per-

mission to put him in the wagon, which request defendant at first denied, saying that they must first go and turn loose the other hogs tied in the woods, but later said to them: "Well, throw him in"; such evidence tending to show defendant's mental attitude towards deceased at the time he fired the shot.

Appeal from Independence Circuit Court; *Dene H. Coleman,* Judge; affirmed.

*W. K. Ruddell* and *Samuel M. Casey,* for appellant.

1.   Evidence that the deceased and his brother had taken up hogs belonging to other people prior to taking the hogs in controversy was competent for the purpose of showing the motive.  8 R. C. L. 201; 99 Ark. 604; 53 Ark. 387; 143 Ark. 419.

2.   It was error to refuse permission to prove by the witness Blackie Britt that he and deceased had taken up hogs belonging to Wright, Fisher and O'Neal, claiming them to be wild, on previous occasions.  It was competent to throw light on the bona fides of deceased and his associates in their claim of ownership.  33 Am. St. Rep. 242-244; 53 Ark. 387.

3.   In the absence of proof of a conspiracy, evidence as to what Jonah Brown did and what he said before the shooting, was not competent.  45 Ark. 132; 59 Ark. 422; 92 Ark. 596; 133 Ark. 477.

Likewise what was said and done by defendant's brothers after the shooting was not competent evidence against the defendant, even if a conspiracy had been proven.  141 Ark. 170; 120 *Id.* 462; 45 *Id.* 165; 78 *Id.* 284.

Statements made by defendant after the parties reached the place where deceased lay, were not competent.  69 Ark. 559; 66 *Id.* 494.

Admission of incompetent evidence prejudicial.  69 Ark. 658; 91 *Id.* 555.

A statement by the defendant to a witness some time prior to the killing to the effect that if he were to catch

a man stealing his hogs he would shoot him, was immaterial and should have been excluded. 73 Ark 366; *Id* 152.

4. The court's modification of the instruction requested by defendant on the subject of defense of himself and his property, deprived the defendant of the benefits accruing to him under §2369, Crawford & Moses' Digest; 44 Am. Rep. 52; 51 *Id.* 153-154; 71 Am. St. Rep. 594; 2 Bishop's New Crim. Law, §706, notes.

*J. S. Utley,* Attorney General, *Elbert Godwin* and *W. T. Hammock,* Assistants, for appellee.

1. Evidence tendered by a witness to the effect that on one occasion deceased had taken up some wild hogs belonging to the witness, which he identified and deceased surrendered them to him, was not competent. Character or reputation cannot be proved by evidence of specific acts nor from personal knowledge of the witness. 10 R. C. L. 953.

2. The testimony of the witness Wright as to the reputation of the witness Britt was properly excluded because of remoteness, based as it was on acquaintance several years prior to the trial. 29 Ark. 131; 22 Corpus Juris, 480. There is no ground for objecting to the exclusion of the testimony of witnesses who were not sworn and whose testimony was not tendered. 88 Ark. 571; 1 Thompson on Trials, §§703-4; 73 Ark. 407.

3. Where specific objections are made to testimony, all other objections are waived. 58 Ark. 381; 65 Ark. 371.

4. The evidence shows a conspiracy to commit an unlawful act, i. e., to take the hogs away from the Britt brothers by force if necessary; wherefore anything said or done by defendant, or either of his brothers at the time of the fatal encounter, was admissible. 69 Ark. 537; 133 Ark. 261.

5. The plea was self defense. There was no effort

to prove that the killing was done in defense of property. The defendant was not entitled to an instruction on that subject. *Stewart v. State.*

*S. M. Casey* and *W. K. Ruddell* in reply.

There was evidence that defendant killed deceased because he was stealing defendant's hogs. The court had no discretion to refuse instructions appropriate to any theory of the case sustained by the evidence. 50 Ark. 545, 549; 52 Ark. 45. See also 86 Ark. 30, 32.

McCulloch, C. J. Appellant was tried under an indictment charging him with murder in the first degree in the killing of Will Britt, and was found guilty of murder in the second degree, his punishment being fixed by the jury at twenty-one years in the penitentiary.

Appellant and Britt were both, according to the evidence, residents of Independence County, and were farmers. The killing occurred in the woods between their respective place of residence. Britt went into the woods with his brother, Elisha, and two neighbors or acquaintances named Coop, for the purpose of catching hogs running on the range. Britt claimed the right to take hogs on the range under a written assignment from one Rust, who asserted a "claim" to wild hogs. The party carried a wagon and team to haul the hogs out of the woods, and, after catching and tying them, they proceeded to load them into the wagon. Appellant came upon the scene with his two brothers, Jonah and Bill, and claimed the hogs as his own, and demanded that Britt release the hogs. At that time there were two hogs loaded on the wagon, and there were two others tied in another part of the woods. Britt refused to give up the hogs, and one of his party suggested that he be allowed to take the hogs home, and that appellant bring replevin to settle the rights of the property, but this was declined by appellant, who was armed with a Winchester rifle, and fired two shots, one of them taking effect in Britt's chest. Britt ran away immediately after receiving the wound,

and it was not known that he had been wounded until he was found lying in the weeds a short distance away when the wagon was moved, and the party proceeded to leave the woods. Appellant's narrative on the witness stand of the circumstances immediately attending the killing was that when he demanded the release of the hogs Will Britt refused the request and proposed to "settle it there man to man," and that his brother Elisha walked from behind the wagon and also remarked, "We will settle it here." Appellant stated that he "stepped back and stumbled," and that when he came up he just threw his gun up and fired and did not put it to his shoulder or take aim.

The case was defended on the ground that appellant acted in necessary self-defense in resisting the threatened assault of Britt, and also that in killing Britt he acted in defense of his property, the hogs which were found in Britt's possession. He invokes the application of the statute which defines justifiable homicide to be "the killing of a human being in necessary self-defense, or in defense of habitation, person or property, against one who manifestly intends or endeavors by violence or surprise to commit a known felony." Crawford & Moses' Digest, § 2369. The case was presented in the court below by appellant's counsel on the theory that the facts brought the case within the application of this statute, and one of the assignments of error relates to the refusal of the court to give the following instruction:

"You are instructed that under the laws of this State a man has a right to defend his home, his person or his property against any one who intends or endeavors by violence or surprise to commit a known felony. And if you believe from the evidence in this case that the defendant, Brown, shot and killed the deceased, Will Britt, while the said Britt was attempting to take away the property of the defendant, Brown, then the killing would be what is known in the law as justifiable or excusable homicide, and you should acquit the defendant."

This instruction is not, however, in accord either with the letter or meaning of the statute, and the court was correct in refusing to give the instruction. Nor do we think there is any evidence which would have justified a submission of appellant's right to commit the homicide on the ground of being in the defense of his property. It will be observed that the statute does not justify the slaying of a person merely for the protection of property, but the justification arises only when there is a manifest intention or endeavor "by violence or surprise to commit a known felony.' A person has no right to slay another merely to protect his property unless he is in possession and the killing is necessary in order to prevent the commission of a felony. The mere fact that property is being wrongfully taken or detained would not justify a homicide. Wharton on Homicide (3 ed.), pp. 390-91; *Utterbach* v. *Commonwealth,* 105 Ky. 723, 88 Am. St. Rep. 329; *State* v. *Tarter,* 26 Ore. 38; *Hill* v. *State,* 43 Texas Criminal Appeal, 583.

The undisputed facts in this case are that the hogs in controversy were not in the possession of appellant, but were in the possession of Britt and his party, who were about to haul them away, and that appellant was endeavoring to compel Britt to release the hogs. The property was not taken by Britt by violence or by surprise, but was taken up under a claim of right. If the property was wrongfully taken, appellant's sole means of redress was an appeal to the law. He had no right to resort to force to regain possession. Therefore the court was correct in refusing to give not only the particular instruction referred to but others on the same subject which were requested by appellants counsel.

Instruction No. 3, requested by appellant, reads as follows:

"You are instructed that the defendant had a right to defend his property against any one who attempted to carry it off, by violence or surprise; and if you believe from the evidence in this case that the defendant shot

and killed the deceased, while they were engaged in an altercation over the ownership of the hogs and while the defendant was excited by the trespass on his property and in the heat of passion caused by the attempt of the deceased and his confederates to carry off the hogs which the defendant believed to belong to him, then the defendant could not be guilty of a higher grade of offense than manslaughter.''

The court modified this instruction, over appellant's objection, by striking out the first part of it relating to the right to defend property and by inserting the words ''and that such provocation and passion was sufficient under other instructions given relative to manslaughter.'' The court was correct in striking out the first part of the instruction for the reasons we have already stated in regard to instruction No. 1; and was also correct in adding the words so as to conform the instruction to the law in regard to reduction of the degree of a homicide from murder to manslaughter where the killing is voluntary ''upon a sudden heat of passion caused by a provocation apparently sufficient to make the passion irresistible.'' Crawford & Moses' Digest, § 2355. The homicide being unjustified, the degree was not reduced unless the facts brought it within the elements embraced in the definition of manslaughter.

The court made a similar modification in instruction No. 5, requested by appellant's counsel on the subject of reduction of the degree of the offense from murder to manslaughter, and for the reasons stated above this modification was correct. The views we have expressed with reference to the right to kill in defense of property disposes of many of appellant's assignments of error concerning the rulings of the court on the admissibility of testimony. For instance, it is earnestly insisted that the court erred in refusing to permit appellant to introduce proof concerning other efforts of the Britt brothers to take up hogs found running in the woods that were shown to belong to other persons. Such testimony was

wholly immaterial, except in impeachment of the surviving Britt as a witness, and the court did not improperly restrict the right of appellant to impeach the witness.

Complaint is also made that the court erred in refusing to permit appellant to prove the general reputation of the deceased and his brother by a witness named Wright. The court excluded the testimony on the ground that it was too remote in point of time and place, and in this we think the court was correct.

It is further contended that the court erred in refusing to permit appellant's counsel to interrogate Elisha Britt on cross-examination, concerning his own efforts in connection with his brother Will to take up hogs belonging to other persons. It appears from the record that appellant was permitted to ask the witness a number of questions on this subject, and after the witness had stated that this was the first trouble that he had ever had about hogs, and that he had not on a former occasion taken up the hogs of Joe Wright, the court refused to permit counsel to ask further questions on that subject. Witness had already answered the questions by stating that he had not taken up hogs belonging to Joe Wright, and it was within the sound discretion of the court to control the cross-examination and to determine to what extent the questions should be repeated. We do not think that there was any abuse of the court's discretion in this instance.

It is contended that the court erred in permitting witness Coop to testify that, just before the shooting occurred, appellant's brother, Jonah, walked up to Will Britt and patted him on the shoulder and shoved him, saying, "You are going to turn the hogs out." All of this occurred, according to the testimony, in the presence of appellant, and was a part of the controversy there between the two factions concerning the release of the hogs. We think it was competent to show everything that occurred there between the parties in the presence of each other.

After Britt was found fatally wounded lying in the weeds, his brother and one of the Coops asked appellant's permission to put him in the wagon, which request appellant at first denied, saying that they must first go and turn loose the other hogs tied in the woods, but later said to them, "Well, throw him in," referring to the act of putting the wounded man into the wagon. This fact was admitted in evidence, and the ruling of the court is assigned as error, but we think it was competent as a part of the transaction to show appellant's mental attitude toward Britt at the time he fired the shot.

There are other assignments of error in regard to the introduction of evidence, which we do not find to be well founded, and are not of sufficient importance to call for a discussion.

From the viewpoint of appellant and accepting his version of the killing, there is much that can be said in the mitigation of his offense, but the jury has accepted the State's theory as to the circumstances attending the killing and gave the defendant the extreme penalty imposed for the crime of murder in the second degree.

After careful consideration of the testimony, we are unable to say that the evidence does not justify the verdict. Finding no error in the proceedings, the judgment is affirmed.