## Barnes v. Commonwealth.

(Decided March 15, 1927.)

### Appeal from Boyd Circuit Court.

1. Criminal Law.—In prosecution of woman, for willfully and maliciously cutting and wounding another woman, with intent to kill, testimony that witness, a policeman, caught victim's husband in

defendant's house undressed held properly excluded, as merely showing another offense.

2.  Witnesses.—In prosecution of woman for willfully and maliciously cutting and wounding another woman, with intent to kill, cross-examination of defendant to effect that policeman once found victim's husband in her house in his night clothes held prejudicial error, since only showing that accused had commmitted another offense.

3.  Criminal Law.—Where defendant presented no affidavit as to newly discovered evidence, held that failure to grant new trial on ground of newly discovered evidence was not error.

P. H. VINCENT for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

Florence Barnes was indicted in the Boyd circuit court for the crime of wilfully and maliciously cutting and wounding Mattie Lee Johnson with intent to kill. On the trial of the case she was found guilty and her punishment fixed at two years' imprisonment. She appeals.

In April, 1925, Florence Barnes and Mattie Lee Johnson went to a dance at the American Legion hall on Winchester street in Ashland. After the dance Florence Barnes started down the street to get a taxi in which to ride home. Soon after she left the dance hall Mattie Lee Johnson left and started down the street; she overtook Florence Barnes at the taxi office. According to the proof for the commonwealth this then happened: Florence Barnes had a coat on her arm; Mattie Lee Johnson recognized it as her husband's coat; told her it was his coat. Florence Barnes said it was not his, "you are not going to get it." Mattie Lee Johnson said "I will," and pulled on the coat. One held on to it and the other pulled until Mattie Lee Johnson got it, and then Florence Barnes cut her on the knee or about the leg.

On the other hand, the proof for Florence was in substance this: While she was standing at the taxi door Mattie Lee Johnson struck her over the head and knocked her down, knocked the overcoat out of her arms and then got her by the hair and dragged her down the street. She had a little pocket knife in her pocket; she got it out

as soon as she could and told her to turn her loose. She didn't turn her loose and she cut her with the knife. She then went away. She also proved that she had gone to the dance with her brother; that her brother checked their wraps and gave her the checks and that when the dance was over, before she started for the taxi, she went to the check room and the man there gave her the overcoat as well as her own wrap, and that she took it thinking that it was her brother's overcoat. It wasn't in fact his overcoat, but the check man made the mistake.

On the trial of the case the commonwealth introduced a policeman of Ashland, who said he knew Mattie Lee Johnson and her husband, Roscoe Johnson. He was then asked this question:

"While you were an officer I will ask you if you ever caught this man Roscoe Johnson in the defendant Florence Barnes' house undressed?" (Objected to by defendant; objection sustained; plaintiff excepted.)

The objection to the evidence was properly sustained. The question should not have been asked, for it was simply an effort to get before the jury the fact that the defendant had committed another offense.

When Florence Barnes testified these questions were asked her:

"I will ask you if it is not a fact that one time Curt Newman, a policeman of the city of Ashland, didn't come up to your house and find Roscoe Johnson in there with just his night clothes and if he didn't jump out of the window, and that he made him come back and dress in there? (Objection; overruled; exception.) A. Yes, sir, he caught him there. That is true is it? A. Yes, sir. Was it before or after the fight? A. It was before the fight."

On re-examination she stated that this was after the fight, but, whether it was after or before, the evidence was wholly incompetent and was only brought into the case for the purpose of showing that the defendant had committed another offense. It in no manner illustrated or showed a motive for the offense, for the proof clearly showed that the defendant was going quietly down the street until Mattie Lee Johnson overtook her and the dispute began about the overcoat.

The rule is different where the evidence is admitted to identify the accused, as in Morris v. Commonwealth, 129 Ky. 294, or to show motive, as in O'Brien v. Commonwealth, 89 Ky. 354. But here clearly the evidence was not competent on either of these grounds, and was not offered for that reason. There was no dispute as to the parties or how the trouble came up, and it stood admitted that Mattie Lee Johnson came up behind the defendant and began the difficulty by trying to pull the overcoat from her.

It is insisted for appellant that the court erred in overruling her motion for a continuance and in not granting her a new trial on newly discovered evidence. But the affidavit for a continuance was fatally defective, as pointed out in Belcher v. Commonwealth, 216 Ky. 126, and there was no affidavit by her as to the newly discovered evidence. See Oakley v. Commonwealth, 158 Ky. 474. Neither of these objections can, therefore, be considered. But the fact is this was simply a street fight between two negro women over an overcoat. The penknife used is not such a weapon as is ordinarily used to kill, and the wounds inflicted were not deadly. On the whole case the court concludes that the defendant was substantially prejudiced by the improper evidence above referred to, as shown by the severe verdict, and that on the whole case a new trial should be granted.

Judgment reversed.