## Maiden v. Commonwealth.

(Decided October 5, 1928.)

### Appeal from Knox Circuit Court.

1. Homicide.—Where murder prosecution was conducted by counsel employed by father of slain man instead of by commonwealth's attorney or county attorney, error, if any, was waived where no objection was made at time trial was begun nor in motion for new trial.

2. Criminal Law.—One tried for offense has right to assume that he will be tried for particular offense charged against him, and that his rights will not be prejudiced by evidence of other independent acts of wrongdoing for each of which he may be compelled to answer in criminal prosecution, with certain exceptions where it is necessary to establish identity, motive, etc.

3. Criminal Law.—In prosecution for murder, admitting evidence to show that accused had son in jail for whom he desired to secure bond, that accused had whisky in his possession, and that he had

been indicted several times but that he said he would go to Williamsburg and change his name and take certain woman with him, for reason that he was afraid to leave her at home for fear some other man would steal her, and other incompetent evidence, and permitting jury's consideration thereof, held error.

4. Homicide.—Where accused was endeavoring to get deceased away from his home and deceased was determined to stay, and there were four different difficulties between deceased and accused, evidence in murder prosecution should not be confined to one in which deceased was killed, where they constituted a continuous difficulty.

5. Witnesses.—In prosecution for murder, permitting counsel for commonwealth to ask defendant questions relative to whisky, and other matters not connected with homicide, held error, since when accused becomes witness for himself, commonwealth does not have right to compel him to admit commission of other offenses, nor to ask questions to excite in mind of jury a suspicion that he has been guilty of other offenses.

TUGGLE & TUGGLE for appellant.

J. W. CAMMACK, Attorney General, and J. M. GILBERT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—
Reversing.

On October 19, 1927, James Maiden shot and killed Tom Brannon. He was charged by indictment with murder, and upon his trial was convicted of manslaughter; his punishment was fixed at confinement in the penitentiary for 21 years. His motion for a new trial was overruled, he excepted, and has appealed.

It appears that neither the commonwealth's attorney nor the county attorney took any part in this prosecution, and that the prosecution was conducted by counsel employed by the father of the slain man. Maiden has devoted a large part of his brief to a discussion of the impropriety of this, but the record does not disclose that he made any objection at the time the trial was begun, nor did he in his motion and grounds for a new trial complain of this as error; hence the error, if any, that may have been so committed, was waived.

Counsel for the commonwealth was permitted, over the objection of Maiden, to show that he had a son in jail at Williamsburg, for whom he desired to secure bond; that Maiden had whisky in his possession at the home of George Powers; that Maiden gave some of this to George Powers and Lee Partin on the day of the homicide; that

Maiden had whisky in his home on that day, and proposed to send for more if necessary; that Maiden had at his home a woman, and the evidence was allowed to creep in which reflected on her character; that Maiden slapped her boy; that Maiden stated he had been indicted several times in the Whitley circuit court, but that he would go to Williamsburg with them and would change his name to Perkins or some other name; that Maiden said he would take this woman with him to Williamsburg for the reason that he was afraid to leave her at home for fear some man would steal her. All of this was incompetent. All that was necessary to be shown was to show that Powers, Partin, and Mayes had met at Maiden's home for the purpose of arranging some business, and that the completion of this would necessitate a trip to Williamsburg. Many of these things we have set out above were criminal.

"Every person who is put upon his trial for an offense selected by the commonwealth has the right to assume that he will be tried for the particular offense charged against him, and that his rights will not be prejudiced by evidence of other independent and disconnected acts of wrongdoing, for each of which he may be compelled to answer in a prosecution instituted for that purpose. There are, however, a few exceptions to this general rule applicable to cases in which it is necessary to establish identity, or guilty knowledge, or intent, or motive for the commission of the crime under trial, or when other offenses are so interwoven with the one being tried that they cannot well be separated from it in the introduction of relevant and competent testimony, or when the independent offense was perpetrated to conceal the crime for which the accused is on trial." Romes v. Com., 164 Ky. 334, 175 S. W. 669.

After two witnesses had been examined the court said to the jury:

"I think as a preliminary it is competent to show previous difficulties between the deceased and the defendant, but the details of the difficulties are not competent at all. It is competent to show which was the aggressor in each of those difficulties, but so far as going into the motive and detail in excess in each of those is not competent, and I am going to eliminate the details as not competent."

An examination of the language of the court will show that this admonition was directed to previous difficulties between the deceased and Maiden, and not to the other things which we have mentioned above, and which we have said should not have been admitted, so that the effect of the court's admonition was to leave them in the record to be considered by the jury and commented on by counsel. That was improper. They had no place in the record at all.

After these men had met at Maiden's home for the purpose of arranging this business, they had dinner. Just after dinner, Mary Maiden went into one of the rooms to change her clothing. While she was doing so, Tom Brannon, the deceased, who had arrived shortly before that, went into the room where she was. This displeased her. She called to her father. He went in, pulled his daughter away from Brannon, and ordered him to get out of the room and off the premises. A fight ensued between Maiden and Brannon. In the scuffle they got into the next room, and there George Powers seems to have taken part. He drew a pistol and endeavored to shoot Maiden. The woman staying at the house seized the pistol and the shot went wild. Maiden went out of the house and called his daughter to bring him his shotgun. This was, as nearly as we can tell from the evidence, between 12 and 1 o'clock. Maiden had no shells for the gun. He went to two neighboring houses in an effort to get shells. He was unsuccessful. He returned with the empty gun, and there is some evidence that Brannon was lying in ambush for him, and tried to shoot him with a pistol. Maiden, using his gun as a club, struck Brannon. The pistol was knocked out of his hand, Brannon's face was bruised, his arm was broken, and he was knocked down. Parties separated them and took Maiden's gun away from him. He made one or two trips to the house of Jeff Carnes and got a gun from him. When he returned, Brannon and Powers were still at the place. Again, parties separated them and took this gun away from Maiden, returned it to Carnes, who had followed Maiden, and Carnes took it home with him. Maiden made another trip or two to Carnes' home and again got Carnes' gun, this time without his knowledge, and started back to his home. This was between 4 and 5 o'clock in the evening. On the way back the shooting occurred. The evidence should have begun at the time when Brannon appeared on the scene, and although there were four

different difficulties between Brannon and Maiden, yet we hardly think the evidence should be confined to the one in which Brannon lost his life, for they seem to be so connected as to constitute a continuous difficulty, and we do not think it would be just to either the commonwealth or the defendant to confine the evidence to the particular difficulty in which Brannon was killed. Maiden seemed to be endeavoring to get Brannon away from his home, and Brannon seemed to be determined to stay, so that the whole affair appears to be one continuous difficulty.

Counsel for the commonwealth should not have been permitted to ask defendant questions relative to matters not connected with this homicide, questions relative to whisky, and so on. In the case of Saylor v. Com., 97 Ky. 184, 30 S. W. 390, 17 Ky. Law Rep. 100, we said:

> "When the accused goes upon the witness stand to testify for himself he may be subjected to the same kind of cross-examination as he would be were he not a defendant. His testimony can be impeached in the same manner as that of any other witness. He is subject to the same rules and is not deprived of any of the privileges that belong to other witnesses. He goes upon the stand to admit or deny his guilt, or to give such facts as may excuse or mitigate the offense, or such as may convict him of the offense with which he is charged, as the facts which he discloses may establish. His testimony can only relate to the offense with which he stands charged."

Further in that same case we said:

> "Under the bill of rights he cannot be compelled 'to give evidence against himself,' but when he becomes a witness for himself in a criminal prosecution he waives that right so far as the charge under investigation is concerned. The fact that he does so waive it does not give the commonwealth the right to compel him to admit the commission of other offenses which would subject him to punishment, presentment or infamy."

Under a similar state of affairs we cited the Saylor case and said, in the case of Baker v. Com., 106 Ky. 212, 50 S. W. 54, 20 Ky. Law Rep. 1778:

> "Nor is it competent to ask a defendant questions whose only possible object is to excite in the minds of the jury a suspicion that he has been guilty

of other offenses than the one for which he is being tried.''

Complaint is made of misconduct of counsel for the commonwealth in his closing argument to the jury; but as the judgment must be reversed for the reasons indicated, and there will be another trial in which this misconduct will not be repeated, we shall make no comment thereon further than to say it was improper.

Maiden has complained of the instructions given, but an examination of them discloses that there is no merit in that contention.

The judgment is reversed.