## Combs v. Commonwealth.

(Decided May 31, 1935.)

704

C. A. NOBLE for appellant.

BAILEY P. WOOTTON, Attorney General, and RAY L. MURPHY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

Lewis Combs has appealed from a sentence of life imprisonment imposed upon him for the murder of Floyd Williams.

On Saturday, June 13, 1931, old man Lewis Holliday invited his neighbors to gather in and hoe out his corn. They came and worked until about 4 p. m., when they were invited to the house for supper. There seems to have been both plenty to eat and plenty to drink, and as a result of the latter some minor brawls occurred. Lewis Combs had one with Sherman Dobson; they were separated by Calloway Napier; and Floyd Williams, who lived in this Holliday home, picked up a club and ran Lewis Combs off the place. Combs went to the home of his uncle, Hiram Napier, and after spending about a half hour there, he and his younger brother, Elbert Combs, came back, and the son of Floyd Williams testified this occurred:

> "He walked up and says, 'They said you are the one that hit me, wasn't you, Floyd?' Daddy says, 'No, I didn't hit you, Lewis,' and Lewis says, 'I knew they told a lie on you,' and he said, 'Let's go in the house and talk a while,' and they went in the house and he asked Daddy if he had a gun to trade on and Daddy said, no, there wasn't a gun on the place and he searched Daddy. He told him, 'Let's go in the back yard and talk a while,' and they went in the back yard."

The witnesses for the commonwealth say that as soon as they got out in the yard the shooting began, that Lewis Combs first shot Orlena Holliday twice, which killed her, then turned on Floyd Williams and shot him four times, and he died. Calloway Napier who had mounted his mule and left when the shooting began

was, so he testified, pursued by Lewis Combs after this shooting was over.

The account given by Combs and his brother is that they had started past this Holliday home on their way to their home when they were called in by Floyd Williams, and soon a racket started. Williams kicked Lewis Combs out the house and was endeavoring to shoot him when Lewis Combs, in self-defense, drew his pistol and began shooting Williams, and that the balls that entered the body of Orlena Holliday and killed her were fired at Williams and either passed through or by his body and struck and killed her standing behind him. No weapon of any kind was found on or near either the dead man or the dead woman.

### The Shooting of the Woman.

Combs was being tried for killing Williams, and objected to all evidence of the killing of Orlena Holliday, but the killing of these two, as done, made the entire exclusion of evidence as to the shooting of the woman impossible. Then, too, the nature of the defense made compelled the commonwealth, in order to meet it, to go still further into the shooting of the woman by showing where she was, where she fell, when she fell, etc., where Williams was at the time the woman was shot, and where he was when she fell, etc. The accused objected to all of this, moved to exclude, etc., but we have found no instance where the court erroneously ruled against him.

### What Williams Said.

Old man Lewis Holliday, the father of the dead woman and an uncle of the accused, testified that as soon as he heard the shooting he started out there, and when he got there Williams said to him: "Lewis has killed me. Are you going to let me lay here and die?" The accused objected to this and moved to exclude it, his motion was overruled, and he says that was error, but it was not. It was said just a second or so after the shooting ceased. "All statements made in the full blaze of the homicide by either of the participants are parts of the res gestæ and admissible either for or against the accused." Karsner v. Com., 235 Ky. 710, 32 S. W. (2d) 43, 46. This also applies to the testimony of Calloway Napier that a second before the

shooting Orlena Holliday said to him, "Run! Lewis Combs is going to kill you!"

### The Motion for Admonishment.

At the conclusion of the evidence this appears:

"Now comes the defendant and moves the court to admonish the jury that they are not to consider any of the evidence introduced in this case or any statement of any witness introduced by the commonwealth and the defendant as to the killing of Orlena Holliday. The court, being advised, overrules the said motion to which the defendant excepts."

Combs now argues that is error and cites in support thereof Roberson's Criminal Law, sec. 1793, notes 11 and 12. If the killing of this woman had been entirely disconnected as to time and place from the killing of Williams and had only been introduced to show identity, guilty knowledge, intent, motive, plan, or system as pointed out in Cook v. Com., 232 Ky. 613, 24 S. W. (2d) 269, the court should have, on motion, admonished the jury of the purpose for which it was introduced; but there was no need for admonition here, as the killing of Orlena Holliday was so connected with the killing of Williams as to make the purpose, for which evidence of it was introduced, so patent as to require no admonition. Jurors are supposed to be of average intelligence, and no one of average intelligence could fail to see the purpose of the introduction of this evidence. That it was introduced to break down appellant's plea of self-defense just sticks out, like a sore thumb, all through this record, and it would perhaps have been prejudicial to the defendant for the court to have singled out this evidence and to have said to the jury that it was admitted to disprove self-defense.

The appellant insists he was entitled to an instruction allowing him to shoot and kill these people in defense of his brother Elbert Combs, but there is not a line of evidence which shows, directly or by reasonable inference, Elbert Combs was in any danger whatever; hence no such instruction was necessary.

### The Plea of Former Jeopardy.

On the day this case was called for trial the following paper was filed in open court:

"Comes the defendant and says he has been tried and a jury passed on his guilt for the killing of Floyd Williams, and he now refers to the records of this court as a part of this motion and pleads a former trial and acquittal as a bar to this prosecution."

During the course of the trial this agreement was made and noted in the transcript:

"The indictment against the defendant, for killing Orlena Holliday and the order showing the trial and the acquittal of the defendant upon that indictment and the instructions of the Court given upon that trial are to be considered as part of the record in this case."

It seems the defendant had theretofore been tried for the murder of Orlena Holliday and acquitted and he was by the foregoing seeking to rely on that acquittal in bar of this prosecution. He has brought here nothing relative thereto except what we have copied above, and of course from that he cannot show the court erred in disregarding his plea. The steps taken in Rogers v. Com., 257 Ky. 495, 78 S. W. (2d) 340, were very different from these.

### Juror's Misconduct.

The juror who, as foreman, signed the verdict was C. C. Hurt, and in his motion and grounds for a new trial the appellant says:

"C. C. Hurt was sworn and questioned upon voir dire examination by the court, who tried this case, and by the attorney for the commonwealth, and by the attorney for the defendant herein, and that the said Hurt stated in direct answers to questions propounded to him by the court and said attorneys that he was not related by blood or marriage, or by consanguinity or affinity to the defendant or to the deceased, Floyd Williams."

It now turns out, so he says in his motion and grounds for a new trial, that a sister of Hurt's mother married a brother of Floyd Williams. The court, in the order overruling the appellant's motion and grounds for a new trial, gave him permission to file affidavits relative thereto, but none were filed, so we must presume he was

unable to find proof to sustain this charge. If he had found it, would it have been grounds for reversing the judgment? See Cox v. Com., 255 Ky. 391, 74 S. W. (2d) 346.

### The Verdict and the Evidence.

His final effort is directed to showing this verdict is flagrantly against the evidence. To be so it must be without support in any of the evidence. The defendant had a fight, Calloway Napier separated him from his adversary, and Floyd Williams ran him off the place. Ere long he returns armed with a 32-20 pistol. He killed Williams and pursued Napier. Certainly there is enough to sustain the verdict.

The judgment is affirmed.